IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BILLY RICHMOND,                          ) Case No. **11-CV-0065**

               Plaintiff,            ) Matthew F. Kennelly
  -vs-                                      ) Judge Presiding

THOMAS DART, SALVADOR GODINEZ,           )Morton Denlow
DUANE COLLINS, EARL TUCKER,              )Magistrate Judge
RICHARD CASTRO, R. HINTON,               )
COUNTY OF COOK, TODD G. STROGER,  )
COOK COUNTY BOARD OF                     )
COMMISSIONERS,                           )
             Defendants.          )

## PLAINTIFF'S SECOND AMENDED COMPLAINT

## INTRODUCTION

**1.** This is a civil rights action seeking monetary damages for massive physical injuries suffered as a result of inmate-on-inmate violence, in which, defendants exhibited deliberate indifference to the safety of the plaintiff, by operating a facility where pervasive violence occurred on a regular basis as documented by a July 11, 2008, *Ninety-Eight* page **Letter of Findings** compiled by the United States Department of Justice after a

17-month investigation, which warned the defendants that their system operated in an unconstitutional manner and essentially mandating defendants to remedy the widespread problem of inmate-on-inmate violence, etc. Furthermore, many years underlined_earlier, the defendants had entered into the _Duran Consent Decree_ which included the prohibition against the practice of _cross-watching_, however, defendants _continued_ to employ the practice, which ultimately led to the attackers being successful in brutally assaulting the plaintiff without a jail guard present to prevent the assault from happening altogether and/or intervening to lessening severity of the attack. On May 13, 2010, defendants, namely Thomas J. Dart, Todd H. Stroger and County of Cook, entered into a 60-page Agreement with the U. S. Department of Justice to remedy unconstitutional violations and this was **99 days before the attack.** Yet, defendants _again_ made a conscious decision to still adhere to the practice of cross-watching which permitted the assault upon plaintiff to happen unimpeded. Plaintiff had verbally warned the defendants that inmates belonging to the Latin Folks Street Gang threatened him with physical bodily harm inclusive of death if he testified at a criminal trial.

Plaintiff had requested transfer to another tier prior to the assault taking place, but defendants ignored the request and let plaintiff remain in a very hostile environment where his life was endangered thereby resulting in a substantial risk of serious harm being perpetrated against him. Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments of the United States Constitution as well as acting repugnant to various State laws.

## JURISDICTION  AND  VENUE

**2.** This court have authority to entertain this civil action pursuant to *Title 28 U.S.C. Section 1331 and 1343(3)*. This court is vested with supplemental jurisdiction to adjudicate all State law claims under *Title 28 U.S.C. Section 1367*. The venue is appropriate pursuant to *Title 28 U.S.C. Section 1391(B)(1)* and *1391(B)(2)* as all acts and omissions complained of occurred within this judicial district and all parties resided within such judicial district at time of occurrence.

## **PARTIES TO THE CASE**

*Plaintiff*:

   **3.** Billy Richmond is a citizen of the United States and resides within the State of Illinois.

*Defendants*:

   **4.** Thomas J. Dart is the elected sheriff of Cook County. At all times relevant to this cause of action, Thomas J. Dart was and is charged with the responsibility of being custodian of detainees/prisoners being held within the Cook County Department of Corrections. He is further charged with the care, control and safety of detainees/prisoners within the Cook County Department of Corrections. Moreover, Thomas J. Dart is responsible for the overall operations of the Cook County Department of Corrections inclusive of implementation and promulgation of policies, practices, rules, procedures, guidelines, directives, customs and the training, hiring, discipline, supervision of subordinates under his command and the like. Thomas J. Dart had direct knowledge of the 98-Page Letter of Findings issued by the U.S. Department of Justice and dated July 11, 2008. Thomas J. Dart acted under color of law while within the scope of his

employment. Thomas J. Dart was and is under legal obligation to abide by the law. He being sued in his official and individual capacity.

**5.** Salvador Godinez is employed by the Cook County Sheriff's Department and at all times relevant to this cause of action was Executive Director of the Cook County Jail. Salvador Godinez is charged with the overall day-to-day operations of the Cook County Jail. Additionally, Salvador Godinez have managerial and supervisory authority of subordinate employees working within the Cook County Jail. On information and belief, Salvador Godinez possessed the power to create policy, procedure, rules, directives, guidelines, <u>inter</u> <u>alia</u>. Salvador Godinez Salvador Godinez had direct knowledge of the 98-page Letter of Findings issued by the U.S. department of Justice and dated July 11, 2008. Salvador Godinez acted under color of law while within the scope of his employment. Salvador Godinez was and is under legal obligation to abide by the law. He is being sued in his official and individual capacity.

**6.** Duane Collins is employed by the Cook County Sheriff's Department and at all times relevant to this cause of action was a

Sergeant working within the Cook County Department of Corrections. Duane Collins exercises supervisory authority over subordinate employees subjected to his command in the Cook County Jail. On information and belief and through imputation of knowledge, Duane Collins was aware of the 98-page Letter of Findings issued by the U.S. Department of Justice and dated July 11, 2008. Duane Collins acted under color of law while within the scope of his employment. Duane Collins was and is under legal obligation to abide by the law. He is being sued in his official and individual capacity.

**7.** Earl Tucker is employed by the Cook County Sheriff's Department and at all times relevant to this cause of action was a Lieutenant working within the Cook County Department of Corrections. Earl Tucker exercises supervisory authority over subordinate employees subjected to his command in the Cook County Jail. On information and belief and through imputation of knowledge, Earl Tucker was aware of the 98-page Letter of Findings issued by the U.S. Department of Justice and dated July 11, 2008. Earl Tucker acted under color of law while within the scope of

his employment. Earl Tucker was and is under a legal obligation to abide by the law. Earl Tucker is being sued in his official and individual capacity.

**8.** Richard Castro is employed by the Cook County Sheriff's Department and at all times relevant to this cause of action was a correctional officer working within the Cook County Department of Corrections. On information and belief and through imputation of knowledge, Richard Castro was aware of the 98-page Letter of Findings issued by the U. S. Department of Justice and dated July 11, 2008. Richard Castro acted under color of law while within the scope of his employment. Richard Castro was and is under a legal obligation to abide by the law. Richard Castro is being sued in his official and individual capacity.

**9.** R. Hinton is employed by the Cook County Sheriff's Department and at all times relevant to this cause of action was a counselor working within the Cook County Department of Corrections. On information and

belief and through imputation of knowledge, R. Hinton was aware of the 98-page Letter of Findings issued by the U. S. Department of Justice and dated July 11, 2008. R. Hinton acted under color of law while within the scope of his employment. R. Hinton was and is under a legal obligation to abide by the law. R. Hinton is being sued in his official and individual capacity.

10. County of Cook is a local governmental entity duly authorized to to operate under the laws of the State of Illinois and is responsible for multitudes of Cook County agencies, departments and the like, which falls under its jurisdiction. The County of Cook had direct knowledge of the 98-page Letter of Findings issued by the U. S. Department of Justice and dated July 11, 2008. It is a necessary party to this cause of action.

11. Todd H. Stroger was the elected official occupying the position of President of the Cook County Board of Commissioners prior to and at the time of plantiff being assaulted. Todd H. Stroger was charged with being responsible for policymaking, overseeing, establishing and allocating

budgets for all entities under its control including the Cook County Sheriff's Department to enable it to hire prospective employees and possessed Decision making authority with respect to the operations of the Cook County Department of Corrections, _inter alia_. Todd H. Stroger had direct knowledge of the 98-page Letter of Findings issued by the U.S. Depatment of Justice and dated July 11, 2008. Todd H. Stroger acted under color of law while within the scope of his employment. Todd H. Stroger was legally obligated to abide by the law. Todd H. Stroger is being sued in his official and individual capacity.

**12.** Cook County Board of Commissioners is a legislative body of elected officials that have powers and duties relating to the management of the affairs of Cook County. In reference to this cause of action, the Cook County Board of Commissioners had direct knowledge of the 98-page Letter of Findings issued by the U.S. Department of Justice and dated July 11, 2008. The Cook County Board of Commissioners acted under color of law and within the scope of their employment. The Cook County Board of Commissioners was obligated to abide by the law. The Cook County

Board of Commissioners is being sued in its individual and official capacity.

## STATEMENT OF FACTS

## COUNTY OF COOK KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY ENTERED INTO CONSENT DECREE IN DURAN VS. DART, NO. 74-C-2949 PROHIBITING CROSS-WATCHING PRACTICE

**13.** The Office of Cook County Sheriff and the County of Cook signed onto the consent decree proclaiming to agree to stop the practice of cross-watching. This is a practice which consist of one correctional officer simultaneously supervising two tiers/cellblocks housing inmates as oppose to one, thereby leaving inmates unsupervised and unmonitored.

**14.** On information and belief, the John Howard Association has cited the Cook County Department of Corrections for the practice known as cross-watching, but it continues to occur. The Duran Consent Decree mandated that one correctional officer be stationed and assigned to each tier in the Cook County Jail.

**15.** Pursuant to the Duran decree defendants were legally bound to abstain from the practice of cross-watching, but they did not do so, as evidenced by the vicious physical attack upon the plaintiff, facilitated by the defendant Castro engaging in cross-watching.

**16.** Pursuant to the 98-page Letter of Findings issued by the U. S. Department of Justice and dated July 11, 2008 defendants were aware that the practice of cross-watching was cited and deemed to be unconstitutional because it exposed detainees to a substantial risk of serious physical harm. However, defendants ignored it and continued the use of cross-watching, as evidenced by the vicious physical assault upon plaintiff, facilitated by the defendant Castro engaging in cross-watching.

## UNITED STATES DEPARTMENT OF JUSTICE 17-MONTH LONG INVESTIGATION CULMINATING IN THE ISSUANCE OF A 98-PAGE LETTER OF FINDINGS DEMONSTRATING DEFENDANTS' <u>UNCONSTITUTIONAL OPERATION OF ITS JAIL SYSTEM</u>

**17.** On July 11, 2008, the United States Department of Justice rendered a 98-page Letter of Findings dated July 11, 2008 detailing

constitutional violations occurring at the Cook County Department of Corrections. This Letter of Findings was specifically directed to defendants, namely Thomas J. Dart and Todd H. Stroger. A copy of the 98-page Letter of Findings was served upon Salvador Godinez and published online.

**18.** On February 16, 2007, the Civil Rights Division of the United States Department of Justice and the United States Attorney For The Northern District of Illinois notified the Cook County Board of Commissioners of their intent to conduct an investigation of the Cook County Jail.

**19.** June 18-22, 2007 and July 23-27 2007, on-site inspections were conducted at the Cook County Jail by officials of the U. S. Department of Justice and United States Attorney For The Northern District of Illinois along with expert consultants in corrections.

**20.** Interviews were conducted with administrative staff, security staff, medical and mental health staff, facilities management staff, training staff and inmates.

**21.** The on-site inspections resulted in reviews of an extensive number of documents, including policies and procedures, incident reports, use of force reports, investigative reports, inmate grievances, disciplinary reports, unit logs, orientation materials, medical records and staff training material.

**22.** Cook County Jail officials along legal counsel for the County of Cook and the Sheriff's Department were informed of the preliminary findings of the U. S. Department of Justice at the close of the July 2007 on-site inspections.

**23.** The U. S. Department of Justice found that certain conditions at the Cook County Jail violated the constitutional rights of inmates. In particular, it was found that inmates at the Cook County Jail were not adequately protected from harm inclusive of physical harm stemming from inmate-on-inmate violence due to inadequate supervision.

## INSTANCES OF INMATE-ON-INMATE VIOLENCE DOCUMENTED BY U. S. DEPARTMENT OF JUSTICE LETTER OF FINDINGS

**24.** The U.S. Department of Justice found that inmates are very much aware of when there is no correctional officer in the housing unit and this is when a higher risk of unlawful behavior takes place, such as, inmate assaults, production of weapons, gang activity, etc.

**25.** The July 11, 2008 Letter of Findings list several cases where inmates were subjected to violent attack where officer was engaged in cross-watching. **Id. 31-32\*\***

(a). *On May 15, 2007, while officer was cross-watching, inmate Carson T. was assaulted with a homemade knife by five or six inmates. He received multiple wounds to his shoulders, back, face and was admitted to the hospital. No officer saw the attack.*

(b). *On May 10, 2007, while officer was cross-watching, a fight broke out involving 25 inmates, in which, 7 inmates sustained lacerations and puncture wounds.*

---

_\*\*__/ Plaintiff intend to show through "discovery" that numerous violent attacks by inmates-on-inmates has occurred before and after the assault upon the plaintiff.

(c). *On December 24, 2006, while officer was cross-watching, inmate George W assaulted inmate Otis F., causing a head injury.*

(d). *On March 19, 2006, while officer was cross-watching inmate John M. was attacked by two other inmates, in which, he suffered two puncture wounds to his neck and one puncture would under his arm.*

**26.** The July 11, 2008 Department of Justice 98-page Letter of Findings proffered the following remedial measures, although not exhaustive, that defendants, County of Cook, Todd H. Stroger and Thomas J. Dart need to take for purpose of effectively dealing with inmate-on-inmate violence. **Id.** **81-83**

(a). *Ensure that correctional officer staffing and supervision levels are appropriate to adequately supervise inmates. Discontinue practice of cross-watching.*

(b). *Establish a procedure to ensure that inmates do not possess or have access to contraband. Conduct regular inspections of cells and common areas of the housing units for contraband.*

(c). *Ensure frequent, irregularly timed, and documented security rounds by correctional officers inside each housing unit.*

## MAY 13, 2010 AGREEMENT BETWEEN DEFENDANTS AND THE UNITED STATES DEPARTMENT OF JUSTICE

**27.** On or about May 13, 2010, based on information and belief defendants, namely Thomas J. Dart, County of Cook, Cook County Board of Commissioners and Todd H. Stroger signed onto a 60-page Agreement with the United States Department of Justice, in the case of **U. S. vs. Cook County, Illinois, et al.**, **No. 10-CV-2946,** relevant to the remediation of problems, including inmate-on-inmate assaults at the Cook County Department of Corrections.

## PLAINTIFF'S PLACEMENT IN DIVISION ONE OF THE COOK COUNTY DEPARTMENT OF CORRECTIONS AND REPORTED TO JAIL PERSONNEL THAT HIS LIFE HAD BEEN THREATENED BY MEMBERS OF A NOTORIOUS AND MURDEROUS STREET GANG, BUT WAS REFUSED A TRANSFER TO ANOTHER HOUSING UNIT

**28.** On March 10, 2010, plaintiff was assigned to **Tier B-4** of the Cook County Jail to awaiting trial on a pending criminal case.

**29.** On March 10, 2010, defendants knew that the Cook County Jail had a lengthy history of violent attacks insofar as inmate-on-inmate assaults.

**30.** Defendants knew that the Cook County Jail is infested with extremely violent gang members.

**31.** Defendants classification system does not distinguish gang members from non-gang members for purpose of assignment to housing unit. Plaintiff was not in a gang. Also dangerous and vulnerable inmates are not kept separate.

**32.** In 2010, prior to plaintiff being assaulted, he was a witness scheduled to testify homicide case involving Francis Whitten.

**33.** In July of 2010, plaintiff was verbally threatened by two members of the Latin Folks Street Gang, in which, he was told that "if he testify at the trial of Frank Whitten, that will result in his death."

**34.** Plaintiff promptly informed defendants, namely Earl Tucker and Duane Collins, that his life had been threatened with death. Plaintiff related that he feared for his life and believed, in all likelihood, that he would be attacked by members of the Latin Folks Street Gang housed on Tier B4. Plaintiff requested to be moved to the *Christian Life Learning*

*Dorm, or alternatively, Protective Custody.*

**35.** Plaintiff's request to be transferred out of harm's way fell on deaf ears. Plaintiff having no authority to relocate himself, was compelled to remain in a potentially deadly environment, since the members of the Latin Folks Street Gang were allowed to stay on Tier B4 and have plaintiff in their immediate sight.

## <u>ON AUGUST 20, 2010 PLAINTIFF WAS BRUTALLY ASSAULTED</u>

**36.** On August 20, 2010, at approximately 6:00pm., a number of gang members of the Latin Folks Street Gang, including the two members that had verbally threatened plaintiff with death, approached plaintiff from behind, pushed him into a cell marked as "Double Zero" and commenced their physical attack by knocking plaintiff to the floor and proceeded to viciously beat and stomp plaintiff. The assault lasted for approximately 10 minutes.

**37.** On August 20, 2010, defendant Richard Castro was assigned to watch Tier B4. At the beginning of the assault, plaintiff screamed out to Richard Castro attempting to get his attention and alert him that an

attack was taking place. Richard Castro related to the plaintiff to "wait a minute" while he engage in cross-watching. Richard Castro did yell and say "wait a minute" and "quiet down" to plaintiff and the attackers, but he did zilch to stop the attack.

**38.** After the gang members finished their vicious assault, plaintiff lapsing in and out of consciousness, staggered into the dayroom and collapsed to the floor, where he laid for approximately 10 minutes.

**39.** Plaintiff was awaken by security and medical staff. Plaintiff had to walk to the infirmary under his own power, since assistance to walk or a wheelchair was not offered, while bleeding and in excruciating pain.

**40.** Plaintiff injuries were serious and required emergency medical treatment. Plaintiff was transported to John H. Stroger, Jr. Hospital of Cook County where he had to undergo at least 6 hours of surgery.

**41.** While hospitalized some Sheriff investigators came to Stroger Hospital to talk with plaintiff about the assault. Plaintiff repeatedly informed the investigators that he wanted to press charges against his attackers.

**42.** The investigators impressed upon plaintiff to not pursue any charges because the guys involved are locked-up for murder and pressing charges will only make them come after plaintiff harder. The investigators told plaintiff, "he should let the matter go and be thankful that he is alive."

**43.** Defendant Castro is of Spanish descent and played favoritism with the detainees that were of Spanish ancestry. For instance, two of the attackers were not suppose to be in the dayroom while plaintiff was out. It was the visiting day for plaintiff. One of the attackers was on a visit, but as soon as his visit was over, defendant Castro was suppose to have locked him back into his assigned cell. Defendant Castro did not follow standard procedure and this paved the way for this attacker to join in on the assault of plaintiff.

**44.** The injuries plaintiff sustained were head concussion, three broken facial bones inclusive of two bones around the eye being crushed, wisdom teeth being knocked loose, damaged to neck and spine, right side of face bruised and swollen.

**45.** Plaintiff now have permanent scarring on his head and face, as a direct result of the assault. Plaintiff vision in his right eye has remarkably diminished as a direct result of the beating. Plaintiff's wisdom teeth had to be extracted as a direct result of the attack. Plaintiff has nerve damage as a direct result of the assault. Plaintiff has permanent damage to his spine. Plaintiff suffers from his left leg shaking uncontrollably as a direct result of the attack. Plaintiff experiences constant pain in his eyes, intense headaches regularly and nightmares concerning the beating.

**46.** On information and belief, in all probability, plaintiff will have to undergo prospective surgeries, (e.g., neck, back, spine, eye, and/or leg) stemming directly from the violent assault.

**47.** Plaintiff provided the names of his <u>known</u> attackers (i.e., "the ones which he could identify during the assault") to Cook County Jail personnel. On information and belief, the attackers were never disciplined for their brutalization of plaintiff.

**48.** The defendants, individually and collectively, intentionally and deliberately acted with reckless indifference to plaintiff's constitutional right to be protected, by virtue of continuously using the practice of cross-watching, while simultaneously signing on to consent decrees telling the federal court that it have ceased and desisted from such practice. However, use the practice was the facilitating factor in permitting the attackers to successfully carry out their assault mission without interference of jail personnel.

**49.** Defendant Castro abandoned his responsibility of ensuring that the inmates were supervised and tier B-4 was being monitored.

**50.** On information and belief, there was no disciplinary policy in effect to discourage and penalize correctional officers from engaging in the practice of cross-watching within the Cook County Jail at the time plaintiff was assaulted

**51.** Plaintiff maintain that he is in need of professional counseling to assist him in coping with post traumatic stress disorder, as a direct result

of being severely beaten while in an institution where plaintiff was supposed to be protected.

52. Defendants failure to protect plaintiff and operate their jail facility in a constitutional manner, resulted in physical injuries to plaintiff which concomitantly will affect plaintiff's ability to work and accumulate social security work credits, caused embarrassment, humiliation and bouts of sleeplessness for plaintiff, deprived plaintiff of the enjoyment of life, will result in plaintiff needing continuous therapy and various medications thereby necessitating lifetime medical insurance coverage.

## LEGAL CLAIMS

## COUNT ONE - DUE PROCESS OF LAW
## FAILURE TO PROTECT

53. Plaintiff realleges and incorporates paragraphs 1 through 52, as if fully set forth herein.

54. Plaintiff is suing defendants County of Cook, Thomas J. Dart, Salvador Godinez, Todd H. Stroger and Cook County Board of

Commissioners for compensatory damages in the amount of Three Million

**($4,000,000.00)** Dollars and Two Million **($3,000,000.00)** Dollars in punitive

damages, excluding the County of Cook, for defendants acting

individually and/or in concerted effort, for operating the Cook County Jail

in an unconstitutional manner, whereby pervasive violent inmate-on-inmate

attacks occurred with regularity for years, thereby subjecting plaintiff to a

substantial risk of serious harm being inflicted upon him and being

deliberately indifference to his constitutional right to safety, in which,

defendants knowingly, deliberately and intentionally with reckless disregard

of plaintiff's rights, utilized the cross-watching practice which facilitated

violent assaults being carried out, while defendants represented

prevarications to the federal court by signing consent decrees and

ignoring remediation measures, but pretending to not allow subordinates

to engage in cross-watching. Defendants were top-level decisionmakers

and chose to flout the law. Plaintiff further seeks the following relief:

**(a).** Lifetime medical insurance coverage.

**(b).** Attorney fees pursuant to Title 42 U.S.C. Section 1988

**(c).** Costs associated with institution and prosecuting this suit.

**-24 of 33-**

**(d).** Pre-judgment and post-judgment interest at applicable statutory rate.

**(e).** Any further relief deemed equitable and appropriate.

## COUNT TWO - DUE PROCESS OF LAW
## <u>FAILURE TO PROTECT</u>

**55.** Plaintiff realleges and incorporates paragraphs 1 through 54, as if fully set forth herein.

**56.** Plaintiff is suing defendants Duane Collins and Earl Tucker for compensatory damages in the amount of Three Million **($3,000,000.00)** Dollars and Two Million **($2,000,000.00)** Dollars, for knowingly, deliberately and intentionally acting individually and/or in concerted effort with deliberate indifference and reckless disregard of plaintiff constitutional rights, subjected plaintiff to being assaulted after consciously refusing to move plaintiff to a different housing unit upon being informed by plaintiff that two Latin Folk gang members had verbally threatened him with death and he feared that an assault would take place. Defendants left plaintiff in harm's way and he sustained serious injuries that will affect him for the remainder of his life. Plaintiff further seeks the following relief:

**(a).** Lifetime medical insurance coverage.

**(b).** Attorney fees pursuant to Title 42 U.S.C. Section 1988

**(c).** Costs associated with institution and prosecuting this suit.

**(d).** Pre-judgment and post-judgment interest at applicable statutory rate.

**(e).** Any further relief deemed equitable and appropriate.

## COUNT THREE - DUE PROCESS OF LAW
## <u>FAILURE TO PROTECT</u>

**57.** Plaintiff realleges and incorporates paragraphs 1 through 56, as if fully set forth herein.

**58.** Plaintiff is suing Richard Castro for compensatory damages in the amount of Two Million **($2,000,000.00)** Dollars and Two Million **($2,000,000.00)** in punitive damages, for knowingly and intentionally ignoring  the Duran consent decree, the 98-Page U. S. Department of Justice Letter of Findings and Cook County Jail policy prohibiting the practice of cross-watching, thereby exhibiting reckless disregard and deliberate indifference to plaintiff's constitutional right to safety, in which, plaintiff was seriously injured during the course of other inmates beating him while Richard

Castro was performing the unlawful practice of cross-watching. Plaintiff

further seeks

the following relief.

**(a).** Lifetime medical insurance coverage.

**(b).** Attorney fees pursuant to Title 42 U.S.C. Section 1988

**(c).** Costs associated with institution and prosecuting this suit.

**(d).** Pre-judgment and post-judgment interest at applicable statutory rate.

**(e).** Any further relief deemed equitable and appropriate.

## COUNT FOUR - CONSPIRACY CLAIM
## <u>TITLE 42 U.S.C. SECTION 1983</u>

**59.** Plaintiff realleges and incorporates paragraphs 1 through 58, as if

fully set forth herein.

**60.** Plaintiff is suing all defendants collectively for compensatory

damages in the amount of Two Million **($2,000,000.00)** Dollars and punitive

damages, except for the County of Cook, for Two Million **($2,000,000.00)**

Dollars, for acting in concert for the unlawfully purpose of operating a jail

system in violation of the Fourteenth Amendment, in direct violation of the

Duran consent decree, and in contravention of the Department of Justice 98-page Letter of Findings with respect to the continued employment of the outlawed practice of cross-watching which led to gang inmates brutally attacking plaintiff with impunity and inflicting devastating injuries. Plaintiff further seeks the following relief:

**(a).** Lifetime medical insurance coverage.

**(b).** Attorney fees pursuant to Title 42 U.S.C. Section 1988

**(c).** Costs associated with institution and prosecuting this suit.

**(d).** Pre-judgment and post-judgment interest at applicable statutory rate.

**(e).** Any further relief deemed equitable and appropriate.

## COUNT FIVE - STATE LAW CLAIM
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**61.** Plaintiff realleges and incorporates paragraphs 1 through 60, as if fully set forth herein.

**62.** Plaintiff is suing defendants collectively for compensatory damages in the amount of Two Million **($2,000,000.00)** and punitive damages for Two Million **($2,000,000.00)** Dollars, for defendants extreme and outrageous

acts and conduct inasmuch as continuing the practice of cross-watching while simultaneously declaring to the federal court that it bars the practice was facilitated plaintiff getting viciously attacked, by refusing to move plaintiff to a different tier once he apprised other defendants that he life had been threatened and requested a transfer as he feared for his safety, and by not fulfilling their constitutional obligation to provide for the protection and safety of detainees. Defendants' misconduct was performed with intentional disregard of its adverse effect upon plaintriff as well as malice and willfulness. Plaintiff suffers from post traumatic stress syndrome, lives in fear and has emotional problems as a direct result of the assault. The plaintiff further seeks the following relief:

**(a).** Lifetime medical insurance coverage.

**(b).** Attorney fees pursuant to Title 42 U.S.C. Section 1988

**(c).** Costs associated with institution and prosecuting this suit.

**(d).** Pre-judgment and post-judgment interest at applicable statutory rate.

**(e).** Any further relief deemed equitable and appropriate.

## COUNT SIX - STATE LAW CLAIM
## <u>CIVIL CONSPIRACY</u>

**63.** Plaintiff realleges and incorporates paragraphs 1 through 62, as if fully set forth herein.

**64.** Plaintiff is suing the defendants collectively for compensatory Damages in the amount of One Million **($1,000,000.00)** Dollars and punitive damages for **($1,000, 000.00)** defendants acting in a collective manner to accomplish an unlawful purpose (i.e., cross-watching) by turning a blind eye and lying to the court that cross-watching was not happening, however, plaintiff's assault reveal that the practice was ongoing. Plaintiff further seeks the following relief:

**(a).** Lifetime medical insurance coverage.

**(b).** Attorney fees pursuant to Title 42 U.S.C. Section 1988

**(c).** Costs associated with institution and prosecuting this suit.

**(d).** Pre-judgment and post-judgment interest at applicable statutory rate.

**(e).** Any further relief deemed equitable and appropriate.

## COUNT SEVEN - STATE LAW CLAIM
## WILLFUL AND WANTON MISCONDUCT

**65.** Plaintiff realleges and incorporates paragraphs 1 through 64, as if fully set forth herein.

**66.** Plaintiff is suing defendants collectively for compensatory damages in the amount of One Million **($1,000,000.00)** Dollars and punitive for One Million **($1,000,000.00)** Dollars, for their egregious misconduct in terms of lying to the federal court about banning the practice of cross-watching, when the fact is that such practice was ongoing and played a major role in plaintiff's assailants assaulting him. The willfully and wantonly display of misconduct is clearly exemplified by defendants signing onto a consent decree and then doing what the consent decree does not permit. Moreover, by defendants refusing to move plaintiff to another tier whereas he could avoid being assaulted demonstrates the flagrancy of their conduct. Plaintiff further seeks the following relief:

**(a).** Lifetime medical insurance coverage.

**(b).** Attorney fees pursuant to Title 42 U.S.C. Section 1988

**(c).** Costs associated with institution and prosecuting this suit.

**(d).** Pre-judgment and post-judgment interest at applicable statutory rate.

**(e).** Any further relief deemed equitable and appropriate.

## COUNT EIGHT – STATE LAW CLAIM
## RESPONDEAT SUPERIOR

**67.** Plaintiff realleges and incorporates paragraphs 1 through 66, as if fully set forth herein.

**68.** Defendants comprised of agents of the Office of the Cook County Sheriff and Cook County Board and Cook County, all acting within the scope of their employment and under color of law, during the time frame of events concerning this cause of action, the County of Cook is liable as principal for all torts committed by its agents.

## COUNT NINE - STATE LAW CLAIM
## INDEMNIFICATION

**69.** Plaintiff realleges and incorporates paragraphs 1 through 68, as if fully set forth herein.

**70.** Illinois law provides that public entities are directed to pay tort judgment for compensatory damages for which employees are individually liable within the scope of their employment activities in committing the misconduct described.

## **JURY DEMAND**

The plaintiff is demanding trial by jury on all issues so triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure

Respectfully Submitted,

/s/__Demitrus Evans_____
Demitrus T. Evans

Demitrus T. Evans
The Evans International firms, LLC
10526 West Cermak Road, Suite 300
Westchester, Illinois 60154-5243
708.531.1740