IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BILLY RICHMOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11 C 65 |
| | ) |
| THOMAS DART, RICHARD CASTRO, | ) |
| DUANE COLLINS, ANTONIO IMHOF, | ) |
| ROBERT LUCAS, EARL TUCKER, and | ) |
| COUNTY OF COOK, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Billy Richmond has sued Cook County, County Sheriff Thomas Dart, and Cook County Department of Corrections employees Richard Castro, Duane Collins, Antonio Imhof, Robert Lucas, and Earl Tucker. He contends that the defendants acted with deliberate indifference in failing to move him from Tier 4B of Division 1 of the Cook County Jail and in responding to an attack on him while he was being held as a pretrial detainee at the Jail on August 20, 2010. Richmond also asserts a number of state law claims related to the incident.

Defendants have moved for summary judgment on all of Richmond's claims. For the reasons stated below, the Court denies the motion in part and defers consideration of the reset of it pending a hearing to address Richmond's exhaustion of administrative remedies under the Prison Litigation Reform Act.

**Preliminary procedural issues**

In their reply, defendants have moved to strike a number of Richmond's responses to defendants' Local Rule 56.1 statement of material facts. Because none of these points affect the particular issue the Court addresses in the present ruling, the Court need not rule on this request.

Defendants have also asked the Court to disregard three exhibits submitted by Richmond in his response to defendants' summary judgment motion on the ground that they have not been properly authenticated: a Cook County General Order, an unsigned psychological report regarding Richmond, and Richmond's medical records from Cermak Health Services of Cook County. The Court need not deal with the first two of these exhibits at this time because they are immaterial to the issue the Court addresses in this decision. As for the medical records, the Court does not rely on these records by themselves, but rather does so in conjunction with Richmond's sworn statements in his deposition and affidavit concerning his medical treatment. *See Moss v. Mormon*, No. 99 C 3571, 2001 WL 1491183, at *4 (N.D. Ill. Nov. 26, 2001). To the extent that the medical records refer to events of which Richmond has personal knowledge, and the Court appropriately may consider them. *See Morissette v. Ghosh*, No. 08 C 2545, 2010 WL 1251443, at *2 (N.D. Ill. Mar. 23, 2010); *see also McCarthy v. Zaruba*, No. 05 C 4321, 2007 WL 1455840, at *2 (N.D. Ill. May 14, 2007) ("It should additionally be noted that the validity of medical records and entries in the medical records cannot be disputed in the absence of any contrary evidence."). The Court also notes that the foundation for admission of these records likely can be laid without much difficulty should the need arise.

**Facts**

Richmond entered the Cook County Jail (CCJ) as a pretrial detainee on March 9, 2010 and, after processing, was placed in Tier B4 of Division 1, a maximum security division of the CCJ. Richmond, who says he was not a member of a street gang, initially shared a cell with Francis Whitten, a member of the Black P-Stone Nation street gang. At some point, Whitten realized that Richmond had witnessed the shooting for which Whitten was currently charged, in which he was claimed to have shot a member of the rival Folk Nation street gang alliance. Richmond said that he had seen that the victim of the shooting "had a gun on him as well" and agreed to testify to that effect at Whitten's retrial. Pl.'s Ex. 1 at 43.

Richmond testified that word got out that he was testifying on Whitten's behalf, and gang members affiliated with the Folk Nation alliance began to threaten him in person and via handwritten notes. The threats became more serious when Whitten was transferred out of Tier B4. Richmond contends that he repeatedly reported these threats to prison officials and asked to be moved but that his requests were ignored. On August 20, 2010, Richmond was attacked by inmates who he says were affiliated with the Folk Nation alliance and was beaten severely. The details of the beating are not pertinent to the issue the Court addresses in this ruling, so the Court will not discuss them here.

After the incident, Richmond was taken to Cermak Health Services, CCJ's medical unit. Richmond states in his affidavit that from there, he was transferred to Stroger Hospital for a series of medical treatments. He says that he suffered a number of broken facial bones and underwent multiple surgeries for facial reconstruction,

including the reconstruction of his orbital bone that sits just below his right eye. He sustained extensive nerve damage to his back and spine, which forced him to wear a neck brace and causes pain when he sits or stands for long periods of time. He also sustained a concussion. He experienced severe head injuries, which caused double vision, migraine headaches, and numbness in his forehead. Richmond's affidavit also refers to medical reports included as Exhibit 2 to his brief in opposition to summary judgment. Pl.'s Ex. B. The records were poorly organized by Richmond's counsel and give no clear timeline regarding Richmond's hospitalizations and treatment after the incident, but various pages do refer to Richmond undergoing oral surgery, neurosurgery, and "trauma surgery." *Id.* at 119.

Richmond contends that he wrote and filed three grievances regarding the August 20 incident. Though he could not remember the exact date on which he filed the first grievance, he testified during his deposition that it was "[a]bout a month or so after the incident of August 20, about a month or so." Pl.'s Ex. A at 20. He explained that he did not file sooner because "[w]hen [he] first came back from Stroger Hospital, [he] wasn't in the condition to write, talk, remember." *Id.* Richmond says he received no response to his first grievance, so he filed a second grievance approximately two weeks after the first. Again hearing no response, Richmond testified, he filed a third grievance. Defendants have submitted an affidavit from a Cook County administrator, stating that the only grievance that Cook County has on record from Richmond is one seeking dental care, which he filed on January 5, 2011.

Richmond originally filed this suit *pro se*. He has since retained counsel and amended his complaint. Richmond asserts eight claims. In his first three claims,

4

brought pursuant to 42 U.S.C. § 1983, he alleges that defendants violated his Eighth and Fourteenth Amendment rights by failing to protect him from harm by other inmates, conspiring to operate CCJ in an unconstitutional manner, and failing to implement corrective procedures and policies issued by the U.S. Department of Justice. Richmond also asserts five related state claims: (1) intentional infliction of emotional distress, (2) civil conspiracy, (3) willful and wanton misconduct, (4) respondeat superior, and (5) indemnification.

## Discussion

Summary judgment is appropriate when the evidence shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In deciding on a motion for summary judgment, courts "view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Groesch v. City of Springfield*, 635 F.3d 1020, 1022 (7th Cir. 2011). "It is not for courts at summary judgment to weigh evidence or determine the credibility of such testimony." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Under the Prison Reform Litigation Act (PLRA), 42 U.S.C. § 1997e, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Dole v. Chandler*, 438 F.3d 804, 808–09 (7th Cir. 2006). Whether a person is considered a prisoner under the PLRA depends on the "status of the plaintiff

5

at the time he brings suit." *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004). Although Richmond is currently on supervised release, he was incarcerated when he initiated this lawsuit, and the case is therefore governed by the PLRA's exhaustion requirement.

Defendants contend in their brief that summary judgment is warranted both on the merits of Richmond's claims and because he failed to exhaust CCJ's administrative remedies prior to initiating suit. Because exhaustion is a prerequisite to suit, it must be determined before a court can address the merits of a prisoner's claims. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) (*Pavey I*); *Ezell v. Bass*, No. 09 C 6908, 2012 WL 379744, at *4 (N.D. Ill. Feb. 1, 2012). The Seventh Circuit held in *Pavey I* that when the issue of a plaintiff's exhaustion involves questions of fact, the trial judge should conduct a hearing to resolve those disputes. *Pavey I*, 544 F.3d at 742.

Exhaustion is an affirmative defense, meaning that defendants bear the burden of establishing that Richmond had available remedies that he did not utilize as required. *Dale v. Lappin*, 376 F.3d 652 (7th Cir. 2004); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007); *Smith v. Buss*, 364 Fed. Appx. 253 (7th Cir. 2010) (unpublished) (defendants bear the burden of "establishing that administrative remedies were available to [plaintiff]"). Although it "behoove[s] [a plaintiff] to present evidence to support his contention that he had indeed exhausted his available administrative remedies by filing a grievance as soon as it was reasonably possible for him to do so," *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011), that does not mean that the plaintiff is responsible to prove exhaustion of remedies. Instead, defendants must show not only that Richmond did not adhere to the grievance process, but also that the process was available to him.

6

To properly exhaust administrative remedies under the PLRA, a prisoner must follow the institution's rules governing filing and prosecution of a grievance, including applicable time limits. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). If the prisoner fails to observe the jail's deadlines, he forfeits any federal claims due to that procedural default. *Copper v. Rothstein*, No. 04 C 8164, 2007 WL 1452989, at *2 (N.D. Ill. May 17, 2007); *see also Dole v. Chandler*, 438 F.3dat 809 (7th Cir. 2006) (failure to comply with deadlines renders claims "indefinitely unexhausted").

The Seventh Circuit generally requires "strict compliance" with an institution's rules governing its grievance process, including applicable deadlines. *Dole v. Chandler*, 438 F.3d at 809. That said, "[i]f administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); *see also Hurst*, 634 F.3d at 412 ("[A]n administrative remedy that would be forfeited for failure to comply with a deadline that in the circumstances could not possibly be complied with would not be 'available' within the meaning of [the PLRA.]"). The Seventh Circuit has held that a prisoner's physical incapacity to pursue the institution's administrative remedies renders those remedies unavailable for purposes of the PLRA. *See Hurst*, 634 F.3d at 412; *Kincaid v. Sangamon Cnty.*, 435 Fed. Appx. 533 (7th Cir. 2011) (unpublished) ("Physical incapacity can be a valid reason for a delay in filing a grievance, and when the need for assistance is urgent, an impediment to grieving can render the process entirely unavailable." (internal citations omitted)).

Defendants have submitted a copy of the CCJ's grievance policy that was in effect in August 2010. Defs.' Ex. 6. That policy requires a prisoner to file his grievance within fifteen days of the event in question. Richmond testified that although he did not

7

remember the specific date, he submitted his first grievance approximately one month after the incident—in other words, after the fifteen-day deadline. He explained, however, that he did not file sooner because he was unable to "write, talk, remember." Pl.'s Ex. 1 at 20. Richmond stated that he filed the grievance once he "was well enough to write and when [he] came out of Stroger Hospital." *Id.* As noted above, Richmond described a number of serious injuries that he suffered from the August 20, 2010 incident. Richmond's testimony and medical records reflect that following the attack, he was hospitalized, underwent several surgeries, and experienced short-term memory loss.

Defendants contend that Richmond was not unconscious for the entire fifteen days following the attack and thus the grievance process was available for him to utilize. In many of the cases in which courts found a prison grievance process to be unavailable because of physical infirmity, the plaintiffs were either unconscious or were in some other way "fully dependent on others for all activities of daily life." *Johnson-Elster v. Elyea*, No. 07 C 4190, 2009 WL 632250, at *2 (N.D. Ill. Mar. 9, 2009) (plaintiff had advanced multiple sclerosis and moved in and out of lucidity); *see also Hurst*, 634 F.3d at 411 (plaintiff had stroke leaving him totally incapacitated "until recently"). In *Pavey v. Conley*, 663 F.3d 899 (7th Cir. 2011) (*Pavey II*), the Seventh Circuit considered the case of a prisoner whose broken arm left him unable to write: "If the inmate is unable to write, he may ask for help filling out the form. But he still must file the proper form with the proper person within the proper time." *Pavey II*, 663 F.3d at 905. *But see Days v. Johnson*, 322 F.3d 863, 867 (5th Cir. 2003) (prisoner's broken hand provided sufficient justification to excuse his untimely grievance), *cited with approval in Hurst*, 634 F.3d at

8

412.

The evidence in this case, however, does not reflect whether any assistance, or even grievance forms, might have been available to Richmond while he was hospitalized at Stroger Hospital. And Richmond says he was incapacitated even after leaving the hospital. Defendants have offered no evidence regarding the actual state of Richmond's health during the relevant period; indeed, they have not even provided evidence from which the Court can determine the date on which Richmond was discharged from Stroger Hospital and returned to CCJ.

Given the state of the record, the Court cannot determine with certainty whether Richmond's condition impaired him in a way sufficient to affect the availability of the CCJ's grievance process at the relevant time. Because defendants have moved for summary judgment, the key point is that they have failed to show the absence of a genuine issue of material fact on the question of failure to exhaust. Because defendants bear the burden on the issue of exhaustion, they are not entitled to summary judgment on this point. Rather, the Court will hold a *Pavey* hearing to resolve the exhaustion issue. The Court therefore defers consideration of defendants' arguments regarding the merits of Richmond's claims. *See Pavey I*, 544 F.3d at 742 (issue of exhaustion should be decided prior to reaching merits of a prisoner's federal claims).

## Conclusion

For the reasons stated above, the Court denies defendants' motion for summary judgment to the extent it is based on the defense of failure to exhaust and will conduct a hearing to decide that issue before dealing with the remainder of defendants' motion.

9

The case is set for a status hearing on December 18, 2012 at 9:30 a.m. for the purpose of setting a date for the hearing.

                                                                                  _____
                                                                                  MATTHEW F. KENNELLY
                                                                                  United States District Judge

Date:  December 11, 2012